IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| ROBERT LEE REYNOLDS, II, | ) | C/A No. 4:07-1724-CMC-TER |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| J. NEAL, WARDEN JOHN J. | ) | |
| LAMANNA, RAY HOLT, | ) | |
| AND HARRELL WATTS | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

The plaintiff, Robert Lee Reynolds, II, ("plaintiff/ Reynolds"), a federal prisoner, filed this action on June 14, 2007,[1] alleging various claims for violations of his constitutional rights pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).[2] Before the undersigned is the defendants' motion to dismiss, or, alternatively, for summary judgment motion. (Document # 20.)[3]

### I. PROCEDURAL BACKGROUND

On November 26, 2007, the defendants filed a motion to dismiss or, alternatively, for

---

[1]This date reflects the date that the petition was stamped as being forwarded to the Court by the mailroom at the Federal Correctional Institution in Edgefield. (Compl. Attach. 4.) *See* Houston v. Lack, 487 U.S. 266 (1988) (holding prisoner's pleading is considered filed when filed with prison authorities for forwarding to the district court).

[2]In Bivens, the Supreme Court established a cause of action against federal officials for the violation of federal constitutional rights. A Bivens claim is analogous to a claim under 42 U.S.C. § 1983 against state actors.

[3]This case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

summary judgment, along with supporting memorandum, affidavits, and exhibits. (Document # 20.) The undersigned issued an order filed November 27, 2007, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir.1975), advising the plaintiff of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. (Document # 21.) On December 19, 2007, the plaintiff filed a response opposing the defendants' summary judgment motion along with a supporting affidavit. (Document # 31.)

## II. DISCUSSION

### A. ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

The plaintiff is a federal inmate currently housed at the Federal Correctional Institution in Edgefield ("FCI-Edgefield"). On March 16, 2005, the plaintiff was sentenced to 121 months of imprisonment by the United States District Court for the Middle District of Florida for conspiracy to possess with intent to distribute 500 grams or more of cocaine. (Defs.' Mem. Supp. Summ. J. Mot. Ex 1.) The Court also imposed a $100 court fee. (*Id*.) The plaintiff arrived at FCI-Edgefield on May 11, 2005, to begin serving his federal sentence. (Defs.' Mem. Supp. Summ. J. Mot. Ex 4- Neal Aff. ¶4.) On June 10, 2005, the plaintiff met with his case manager who told the plaintiff he could participate in the IFRP to pay his $100 court fee. ( (Defs.' Mem. Supp. Summ. J. Mot. Ex 4- Neal Aff. ¶4.)

The plaintiff acknowledges that he was informed that he owed $100. (Compl. at 4.) The plaintiff alleges, however, that he questioned the validity of the fee and asked defendant Neal about his authority to collect it. (*Id*.) The plaintiff alleges Neal "failed/refused" to answer his inquiries, and instead falsified a document indicating the plaintiff had refused to pay the fee. (*Id*.) The plaintiff alleges that because of the document stating he had refused to pay, he was placed in the

2

Inmate Financial Responsibility Program ("IFRP") refusal status and as a result he was stripped of his pay grade and placed on maintenance pay causing him to lose approximately $1200 in institution pay over the past two years. (*Id.*) The plaintiff further alleges that, despite filing grievances with the defendants LaManna, Holt, and Watts, they have failed to take any action against Neal for falsifying the IFRP form and placing him in IFRP refusal status. (Mem. Supp. Compl. at 4.) The plaintiff is seeking to be removed from IFRP refusal status, and compensation for the penalties which he has incurred from having been placed in refusal status. (Compl. at 5.)

### B. STANDARD FOR SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir.1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed.R.Civ.P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed.R.Civ.P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. Fed.R.Civ.P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In <u>Celotex</u>, the Court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. <u>Celotex</u>, 477 U.S. at 322-323.

### C.  ANALYSIS

**1. Merits**

The IFRP was enacted to assist inmates "to meet [their] legitimate financial obligations" and applies to "all inmates in federal facilities." 28 C.F.R. § 545.  It is well-established that the BOP can properly use the IFRP as an avenue to collect the petitioner's court costs. <u>Matheny v. Morrison</u>, 307 F.3d 709, 712 (8th Cir. 2002) (holding that BOP has discretion to place inmate in IFRP when sentencing court has ordered immediate payment of court-imposed fine. *See also* 28 C.F.R. § 545.11 (2004) (requiring inmates to make payments towards court-ordered obligations, including fines).

As noted above, the plaintiff acknowledges that in June 2005 he was informed by his case manager that he had a debt of $100.  The plaintiff alleges, however, that he questioned the validity of the fee and the defendant Neal's authority to collect it.  (Compl. at 4.)

Nonetheless, the case manager executed an inmate financial contract whereby the plaintiff was to pay $25 quarterly until the assessment was paid in full.  (Defs.' Mem. Supp. Summ. J. Mot.

4

Ex. ¶ 4.) On November 4, 2005, the defendant Neal received a letter from the plaintiff alleging that funds were being improperly removed from his inmate trust fund account for IFRP payments. (Defs.' Mem. Supp. Summ. J. Mot. Ex. 4- Neal Aff. at ¶5.) The plaintiff claimed that he had never authorized any removal of funds from his account. (*Id.*) Neal states that he reviewed the contract and discovered the plaintiff had not signed it. (*Id.*) Neal spoke with the case manager who explained that the plaintiff had refused to sign it but instead had written "Non Assumpsit." (*Id.*)

Neal contends that the plaintiff argued that he had not been provided with any document with his signature in which he agreed to or approved of the sentencing court imposing any assessment or fines on him. (*Id*. at 6.) Neal states that he attempted to explain to the plaintiff that his approval was not required for a federal judge to impose an assessment or fine, as that was a normal part of the sentencing. (Defs.' Mem. Supp. Summ. J. Mot. Ex. 4- Neal Aff. at ¶ 6.) Neal also informed the plaintiff that he needed to sign a contract to participate under the IFRP for payment of the $100 assessment and if he refused to sign a contract, he would be placed on IFRP refuse status. Neal informed the plaintiff he was cancelling the prior contract, because the plaintiff had not signed it and Neal would contact the court and arrange for the plaintiff to be reimbursed the funds that had been withdrawn for his account. *(Id.)* Neal also informed the plaintiff that he was being placed on IFRP refusal status. (*Id.*)

The plaintiff disputes that he refused to participate until provided with a document with his signature that shows he approved or agreed to the court's imposition of the fee. (Pl.'s Mem. Opp. Summ. J. Mot. at 4.) The plaintiff states that he limited his inquiries to requests for documentation showing the validity of the debt and Neal's authority to collect the debt. (Pl.'s Mem. Opp. Summ. J. Mot. at 2, 4.) However, the undersigned notes that in one of his initial grievances, the plaintiff

5

alleged he was placed in refusal status for asserting a counterclaim regarding the debt and he specifically stated he was challenging the presentment of the debt. He attached a copy of two sections of the Uniform Commercial Code ("UCC"). (Compl. Attach. 2 at 2.). The first section, § 3-401, states that a person is not liable on an instrument unless that person signed the instrument and the second section, § 3-501, provides that a person who has been presented with an instrument may require exhibition of the instrument or contract and reasonable identification and evidence of the authority of the person making the presentment.

First, the UCC is not relevant to the plaintiff's federal conviction and resulting sentence or fines and a violation of the UCC cannot be the basis for a § 1983 claim. <u>Cyrus v. U.S. Marshals</u>, 2007 WL 601610 (D.S.C. 2007)(holding "a violation of the UCC does not give rise to a constitutional claim under § 1983."); <u>United States v. Woodruff</u>, 2007 WL 2123735 *1 (N.D.Cal. 2007)(slip copy)("the Uniform Commercial Code pertains to commercial transactions governed by state law and has no bearing on a defendant's federal court sentence for a criminal act"). More importantly, it is clear that the plaintiff is essentially attacking part of his sentence, the imposition of a court fee by the sentencing court.

The plaintiff alleges defendant Neal falsified a document and caused him to be placed in refusal status. However, the undersigned notes that the plaintiff acknowledges that he refused to participate in the IFRP because he questioned the debt's validity and Neal's authority to collect it. (Compl. Attach 2 at 2.) Although the evidence shows the plaintiff refused to participate in the IFRP because he wanted to assert a counterclaim, either way the plaintiff was attempting to challenge the court ordered fee. However, from the record in this case, it does not appear that the plaintiff directly appealed the court's order imposing the court fee. If he believed that the district court somehow

violated his rights when imposing the court fee and/or he had an argument or a "counterclaim" against the imposition of such a fine, he should have filed a direct appeal or a 28 U.S.C. § 2241 habeas action raising these issues. *See* Williams v. Pearson, 197 Fed.Appx. 872 (11th Cir. 2006).[4] The plaintiff did not appeal his sentence and raise an issue regarding the imposition of the court fees nor has the plaintiff raised this issue in a habeas action. The plaintiff simply cannot use a §1983 action to challenge the imposition of a court fee by the sentencing court. Chavez v. Truesdale, 36 Fed.Appx. 859 (7th Cir. 2002)(holding that although labeled as a civil rights action, it is in essence a challenge to the execution of his sentence). Further, the plaintiff cannot reasonably argue that his failure to agree to participate in the IFRP until he was provided certain documentation did not amount to a refusal to participate in the IFRP.

Additionally, the undersigned notes that where, as here, a district court imposes a fine and elects not to establish a schedule of payment, but instead makes payment of the fine due immediately, the court delegates none of its functions or powers and the BOP has the authority to administer collection through the IFRP. McGhee v. Clark, 166 F.3d 884, 886 (7th Cir. 1998). Thus, the defendants had the requisite authority to collect the court assessment from the plaintiff. Furthermore, to the extent that the plaintiff is claiming that his due process rights are violated because he has lost privileges for refusing to participate in the IFRP, his claim also fails. Compelled

---

[4] A challenge to the an IFRP payment schedule for the fines that were imposed in a federal criminal case concerns the execution of his sentence and is therefore correctly framed as a habeas claim brought pursuant to Section 2241. *See* Matheny v. Morrison, 307 F.3d 709, 711-12 (8th Cir. 2002). The undersigned notes that a challenge to the imposition of a fine is not cognizable in a 28 U.S.C. § 2255 proceeding. United States v. Bernard, 351 F.3d 360, 361 (8th Cir.2003) (inmate cannot challenge restitution portion of his sentence using § 2255 because statute affords relief only to prisoners claiming right to be released from custody).

participation in the IFRP is neither punitive in nature nor violates due process because it is reasonably related to the legitimate government objective of rehabilitation. Johnpoll v. Thornburgh, 898 F.2d 849, 851 (2d Cir.1990). The Circuit Courts which have addressed this issue have uniformly upheld the IFRP against constitutional attack on due process grounds. Weinberger v. United States, 268 F.3d 346, 360 (6th Cir. 2001); McGhee v. Clark, 166 F.3d 884, 886 (7th Cir. 1999); James v. Quinlan, 866 F.2d 627, 629 (3rd Cir. 1989); Dorman v. Thornburgh, 955 F.2d 57, 58-59 (D.C.Cir.1992). *See also* Webb v. Hamidullah, 2006 WL 1946441 (D.S.C. 2006).

Further, as to the plaintiff's claims that the defendants Lamanna, Holt, and Watts failed to respond to plaintiff's grievances, these claims are without merit. A prison official's response, or lack thereof, to an inmate's administrative remedies is not sufficient alone to hold the official liable in a civil rights action. The law is well-settled that there is no constitutional right to a grievance procedure. Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-138 (1977). Even if the prison provides for a grievance procedure, violations of those procedures do not amount to a civil rights cause of action. Adams v. Rice, 40 F.3d 72, 75 (4th Cir.1944) (dismissing plaintiff's claim that he was retaliated against when he was barred access to the grievance process because "the Constitution creates no entitlement to grievance procedures or access to any such procedure"); Mann v. Adams, 855 F.2d 639, 640 (9th Cir.1988) (holding prison official's failure to comply with state's grievance procedure is not actionable under § 1983 ); See also Doans v. Rice, 831 F.2d 1057 (4th cir. 1987) (unpublished). Thus, even if defendants Lamanna, Holt and Watts failed to respond to or process the plaintiff's grievances, the plaintiff has not stated a constitutional claim.

8

**2. Qualified Immunity**

Additionally, the defendants contend the are entitled to qualified immunity. The undersigned agrees. Although the burden of showing immunity remains on the defendants, an early determination is desirable, since immunity provides complete protection from a lawsuit, including from extensive discovery or other preparation. When a defendant asserts that he or she is completely immune from suit, the court must consider whether the defense meets the standard set forth by various courts which have considered the issue. When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit. Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it. The defendants argue that they are entitled to qualified immunity in their individual capacity.

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general of abstract level, but at the level of its application to the specific conduct being challenged. Moreover, the manner in which this [clearly established] right applies to the actions of the official must also be apparent. As such, if there

> is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir.1994) (internal citations omitted).

In Torchinsky v. Siwinski, 942 F.2d 257 (4th Cir.1991), the Fourth Circuit Court of Appeals explained the rationale for Harlow qualified immunity:

> The grant of qualified immunity to government officials ensures that these officials can perform their duties free from the specter of endless and debilitating lawsuits. Without such immunity, the operations of government would be immobilized. Permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.

Torchinsky, 942 F.2d at 260-261 (citations omitted).

In Torchinsky, the court further noted that "a particularly appropriate procedure for determining an official's entitlement to qualified immunity is summary judgment." *Id*. The Torchinsky court held that an official's entitlement to qualified immunity is based upon an "objective reasonableness" standard. "The very idea of reasonableness requires that courts accord interpretive latitude to officials judgments." *Id*. at 261 (citing Sevigny v. Dicksey, 846 F.2d 953 (4th Cir.1988). Therefore, a plaintiff may prove that his rights have been violated, but the official is still entitled to qualified immunity if a reasonable person in the "official's position could have failed to appreciate that his conduct would violate" those rights. Torchinsky, 942 F.2d at 261 (*citing* Collinson v. Gott, 895 F.2d 994 (4th Cir.1990)). As the Fourth Circuit explained in Swanson v. Powers, 937 F.2d 965 (4th Cir.1991), "[o]nly violations of those federal rights clearly recognized in existing case law will support an award in damages under 42 U.S.C. § 1983." 937 F.2d at 967. Therefore, if a particular

action by a state agency is deemed unconstitutional, the defendant is entitled to qualified immunity, unless there is clearly established case law demonstrating that the alleged conduct is violative of the Constitution.

In Maciariello v. Sumner, 973 F.2d 295 (4th Cir.1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity when it set forth that:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

Maciariello, 973 F.2d 295, 298 (4th Cir.1992) (citations omitted).

For a plaintiff to recover, he must show the defendants 1) violated a particular right clearly established in law, and 2) the application of that right to the actions of the official must be apparent. The plaintiff in this case has not done so. The court imposed a fee and the defendants were merely attempting to collect the fee through the IFRP, as allowed.  The plaintiff incorrectly attempted to challenge the fee by refusing to participate in the IFRP until he was provided documentation.  Based on the facts as discussed above, the defendants did not violate any of the plaintiff's constitutional rights.  Therefore, the undersigned recommends that the defendants be granted summary judgment as to the plaintiff's monetary damages on the basis of qualified immunity.

### III.  CONCLUSION

Based on the foregoing, it is recommended that the defendants' motion for summary judgment (documents # 20) be GRANTED and the plaintiff's complaint be dismissed.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

April 25, 2008
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**